

FILED

JAN 2 8 2016

DAVID CREWS, CLERK
BY _____
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**CYNTHIA VERDISE FULLER**                                                **PLAINTIFF**

**VERSUS**                             **CAUSE NO.** 1:16CV14-GHD-DAS

**ERIC SLOAN, in his Individual Capacity, and**
**MONROE COUNTY, MISSISSIPPI**                            **DEFENDANTS**

                                                **JURY TRIAL DEMANDED**

---

## COMPLAINT

---

This is an action to recover actual and punitive damages for arrest and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The following facts support this action:

1.

Plaintiff CYNTHIA VERDISE FULLER is an adult resident citizen of 11 Lee Avenue, Amory, Mississippi 38821.

2.

Defendant ERIC SLOAN (hereinafter "Defendant Sloan"), at all relevant times, was a law enforcement officer, employed by Monroe County, Mississippi, but assigned to the North Mississippi Narcotics Unit. At all relevant times, Defendant Sloan acted under color of state law. Defendant Sloan may be served with process by service upon him at his place of employment in Hatley, Mississippi, the Hatley Police Department, 60279 Hatley Road, Amory, Mississippi 38821.

Defendant MONROE COUNTY, MISSISSIPPI (hereinafter "Defendant Monroe County") is a political subdivision of the State of Mississippi. Defendant County may be served with process upon its Chancery Clerk, Ronnie Boozer, 201 West Commerce Street, Aberdeen, Mississippi 39730. At all relevant times, it acted under color of state law.

3.

This Court has federal question jurisdiction under 28 U.S.C. § 1331, and civil rights jurisdiction 28 U.S.C. § 1343, for a cause of action authorized by 42 U.S.C. § 1983.

4.

Plaintiff has dated Unseld Parks for many years. Plaintiff has a prior drug conviction. However, Plaintiff has been free of the use of illegal drugs for years.

5.

Plaintiff and Parks' relationship has been "off and on." They would live together at times, and then split up at times. As of May 29, 2013, they were separated, with Plaintiff residing at a different residence in Amory, Mississippi, as is shown by Exhibit "A," attached hereto. Parks continuously resided at his residence at 401 Parkview Street, Amory, Mississippi.

6.

Notwithstanding their being separated, Plaintiff was close to Parks and harbored hopes of getting back together with him at some point.

7.

On May 29, 2013, a mutual friend, Demond Latham, called Plaintiff to inform her that law enforcement officers were chasing Parks. Plaintiff hoped that Parks would soon arrive home and,

therefore, left her residence and went to the residence of Parks. Since she did not have a key to Parks' residence, she sat on the porch awaiting Parks arrival.

8.

Parks did not arrive at his home. Instead, Defendant Sloan and narcotics officer Ed Maher arrived at the Parks' home. Parks had already told Defendant Sloan and Maher that he lived alone and no one was at his residence. Parks had no knowledge that Plaintiff had gone to his residence.

9.

When Defendant Sloan and Maher arrived at Parks' home and saw Plaintiff sitting on the porch, Defendant Sloan began to verbally abuse Plaintiff, calling her an "ignorant nigger."

10.

Other officers arrived. The officers entered Parks' home and searched it, where they found a small quantity of marijuana and a firearm. Following Defendant Sloan's direction, Plaintiff was taken into custody, even though there was no evidence that the marijuana or gun belonged to Plaintiff.

11.

Thereafter, Defendant Sloan incarcerated Plaintiff in the Monroe County Jail. Defendant Sloan seized from Plaintiff her narcotics prescription medication, which Plaintiff was taking due to extreme pain. Defendant Sloan adamantly refused to give Plaintiff her medication, although she was in severe pain. Plaintiff begged for her medication at the jail, to no avail.

12.

Parks was also incarcerated at the jail at the same time as Plaintiff. Defendant Sloan and other officers interviewed Parks, who told the officers that the drugs and gun belonged exclusively

to him. See Parks' Statement of Facts, attached hereto as Exhibit "B." Defendant Sloan, mindful that he had arrested Plaintiff without probable cause, told Parks to make sure that the "black bitch" (referring to Plaintiff) does not sue him (Defendant Sloan).

13.

Notwithstanding having actual knowledge that neither the drugs nor the firearm belonged to Plaintiff or were possessed by Plaintiff, Defendant Sloan signed the false, baseless affidavits, attached hereto as Exhibits "C" and "D."

14.

Even though there was no evidence that Plaintiff possessed the gun or the marijuana, Plaintiff was indicted by a Grand Jury. Since there was no evidence against Plaintiff, this Indictment could have only been based upon false information. Since Defendant Sloan was the person in charge of the search and since Defendant Sloan signed the original affidavit of the charges, false information given to the Grand Jury must have originated from Defendant Sloan. A copy of the Indictment is attached hereto as Exhibit "E."

15.

An assistant district attorney, realizing Defendant Sloan could produce no evidence against Plaintiff, and that, in any event, Defendant Sloan was not a credible witness, moved for a *nolle prosse* against her. See Motion to *Nolle Prosequi*, attached hereto as Exhibit "F." The motion was granted by the Circuit Court of Monroe County, and the charge dismissed. See Order to *Nolle Prosequi*, attached hereto as Exhibit "G."

00292272.WPD

-4-

*PUNITIVE DAMAGES*

16.

Punitive damages should be assessed against Defendant Sloan, because he has continued his lawless actions since his wrongful arrest of Plaintiff. Specifically, Monroe County investigator Rodney Starling, in the course of investigating a home invasion and burglary of $235,000.00, obtained reliable information from one Stephanie Herring (a white person), that Defendant Sloan attempted to extort $10,000.00 of the stolen money from her.

17.

Herring told Monroe County investigator Starling that she had told Defendant Sloan where $80,000.00 of the stolen money was located. On that same day that Herring told Defendant Sloan about the location of the stolen $80,000.00, Defendant Sloan claims he was shot by a black assailant on a red motorcycle. Following his claim of having been shot by a black assailant on a red motorcycle, Herring questioned Defendant Sloan. Defendant Sloan took the Fifth Amendment when Herring asked him whether the actual reason he was shot related to the $80,000.00 about which Herring had told him. The $80,000.00 was at a Nettleton residence, and it was at this residence where Defendant Sloan was shot probably by white persons. Defendant Sloan was not shot by a black assailant on a red motorcycle, as he had falsely claimed.

18.

Monroe County Investigators Starling and Brandon Davis relayed the information about Defendant Sloan's criminal activities to Monroe County Chief Deputy Curtis Knight, who notified Mississippi Highway Patrol Investigator Kenneth Bailey. A copy of the statement of Kenneth Bailey

summarizing the information about Defendant Sloan's criminal activity is attached hereto as Exhibit "H."

19.

Mississippi Highway Patrol Investigator Bailey caused a Polygraph examination to be conducted regarding Herring's statements concerning Defendant Sloan's criminal activities. Herring passed the Polygraph examination, thus indicating the information she had given investigators about Defendant Sloan's serious criminal activity is true. See results of Polygraph examination of Herring, attached hereto Exhibit "I."

20.

The information Herring gave Monroe County investigators about Defendant Sloan's criminal activities is probably reliable, as indicated by a suspicious story Defendant Sloan gave the Sheriff of Monroe County as an explanation for his having been shot. See newspaper article of August 24, 2015, attached hereto as Exhibit "J."

21.

Because criminal activity in which Defendant Sloan participated with Herring indicates a willful indifference to citizens' rights, and indicates that his wrongful arrest of Plaintiff is not an isolated incident, punitive damages should be awarded against Sloan.

22.

Punitive damages are particularly appropriate because an assistant district attorney has advised Plaintiff that Defendant Sloan will not be criminally prosecuted.

*INDEMNIFICATION*

23.

Under Mississippi law, Monroe County, Mississippi is required to indemnify Defendant Sloan for whatever judgment is obtained against him for acts taken in the course and scope of his employment. Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-7. Pursuant to 42 U.S.C. § 1988, this rule of Mississippi law applies.

24.

Defendant Sloan arrested and prosecuted Plaintiff without probable cause in violation of the Fourth Amendment.

25.

Plaintiff race (black) was a contributing factor in her arrest. This violates the equal protection clause of the Fourteenth Amendment.

26.

Plaintiff has suffered damages from the stress of being in prison, damages from the stress of being criminally prosecuted, and damages from the stress of being deprived of her medication.

## **REQUEST FOR RELIEF**

Plaintiff requests actual and punitive damages in an amount to be determined by a jury, and for reasonable attorneys' fees, costs and expenses. Plaintiff also requests that Monroe County be required to indemnify Defendant Sloan for any damages and attorneys' fees awarded against him, pursuant to Mississippi law.

RESPECTFULLY SUBMITTED, this the 27th day of January, 2015.

CYNTHIA VERDISE FULLER, Plaintiff

By: _____

Jim Waide, MS Bar No. 6857
waide@waidelaw.com
WAIDE & ASSOCIATES, P.A.
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEYS FOR PLAINTIFF

00292272.WPD

-8-

Oct 22 2015 2:12PM HP Fax                                    page 3

**ARBOW MANAGEMENT CO., INC.**
PROPERTY MANAGEMENT & CONSTRUCTION
2210 CRABAPPLE DRIVE
TUPELO, MS 38801
(662) 213-1818 ✦ OFFICE
(662) 840-2216 ✦ FAX

## SECURITY DEPOSIT AGREEMENT
### (THIS IS NOT A RENT RECEIPT)

Date: _____ 4/1 _____, 20 13
Received from: ____ Cynthia Fueller ____
Security Deposit $ 130 ___, Furniture Deposit $ _____, Child(ren) Deposit $ _____, Pet Deposit $ _____
Total Deposit Collected $ 50 ___ by Cash _____ Check _____ Money Order X ___ as a deposit for
Townhouse/Apartment Number _11_, located at _Amory Rental, LP_____ Apartments.

Management agrees that, subject to the conditions listed below, this deposit will be refunded in full.

By: _____
          **Manager**

Undersigned agrees that this Security Deposit is NOT a rent receipt, may not be applied as rent, and that the full monthly rent will be paid on the first of every month including the last month of occupancy.

_____
          **Applicant(s)**

### RELEASE OF THE SECURITY DEPOSIT IS SUBJECT TO THE FOLLOWING PROVISIONS:

1. Full term of the lease has expired.
2. A full calendar month's written notice, from the first of a given month, was given prior to vacating the apartment.
3. No damage to apartment beyond the normal wear and tear.
4. Entire apartment is left in clean, rentable condition, as specified in the Request for Security Deposit Refund Form No. 112. (Move-out cleaning instructions)
5. No stickers, no glue-on picture hangers, large scratches or holes in the walls. (Allowance for a few small nail holes.)
6. No noticeable indentations in resilient floor, broken tiles, or uncleanable carpet.
7. No unpaid charges or delinquent rents.
8. All keys have been turned in to the Office.
9. Fire Extinguisher, T.V. Cable and components to Antenna System are not removed from apartment.
10. Check out with Resident Manager, after all belongings have been removed.
11. Your deposit refund will be mailed to you within 10 (ten) days, if the conditions above are met. If a partial refund is made, you will be furnished an accounting of how the charges are made.
12. The portion of the deposit for Pets is refundable upon transfer by the Resident's employer, provided the other terms of the lease have been met, and a letter has been received from the employer evidencing this transfer.
13. In event applicant refused to execute the Lease Agreement and does not accept the apartment for any reason whatsoever, this deposit shall be forfeited as liquidated damages.
14. The above deposit will be refunded in full, if application is not approved.

NOTE: Management must be notified immediately about carpet stains, or any type of damage to apartment (or furniture if apartment is rented furnished); immediate repairs or adjustments could avoid later misunderstandings.

W & M Form 150



In accordance with Federal Law and the U. S. Department of Agriculture Policy, this institution is prohibited from discriminating on the basis of race, color, national origin, sex, age or disability. (Not all prohibited bases apply to all programs).





**EXHIBIT**
A

OCCUPANCY RULES

Complex Name: _Amory Rentals LP_

Apartment Number _11_ Tenant _Cynthia Fuller_

(1) Your rights are as follows:

    (a) You have the right to the peaceful enjoyment of the unit you are renting.
    (b) You have the right to expect the housing unit to be maintained to the same condition as when occupied by your household.
    (c) You have the right to discuss any problems with management.
    (d) You have the right to appeal decisions made by management in accordance with 7 CFR 3560.160. A copy of this regulation is posted in the office and a copy will be given you upon request.
    (e) You have the right to defend yourself, and may obtain legal counsel to assist in your defence.

Your responsibilities are as follows:

    (a) To comply with all of the provisions required by the executed lease.
    (b) To pay the correct amount of rent on a timely basis each month.
    (c) To maintain the unit in a decent, safe, and sanitary condition.
    (d) To pay for any damages to the housing unit done by any household member or guest.
    (e) To comply with the terms of all applicable assistance programs covering the unit and/or complex.
    (f) To not sublet the unit .

(2) Your rent payment will be as shown in the lease. Rents are due on the first of each month. A deliquency charge of $10.00, or 5% of your gross monthly contribution, whichever is greater will be added to the rents due if not paid by the 10 th of the month. Your lease will be in default if the full amount is not received by the 10 th of the month.

(3) Management will perform routine inspections of your unit to inspect the unit for damage, abuse, or misuse, and for the purpose of servicing equiptment and making needed repairs. You will be advised 24 hours in advance, if possible, of a scheduled inspection.

(4) Should you have a complaint, you should contact the Site Manager during posted office hours and express your concerns.

(5) If you discover a maintenance need, it should be reported immediately to the Site Manager who is responsible for preparing a work order and following up to be sure the work is completed in a timely manner.

Oct 22 2015 2:13PM HP Fax                                          page 5

(6) There are no housing services available at this complex. If there is a laundry room, or community room located on the complex they are there for use by the tenants.

(7) The office is usually located on the complex. If there is not an office located on the complex, the office to contact is located at ___662 - 840 - 5118___. The office hours and emergency telephone number are posted at the office.

(8) Non-functional vehicles are to be moved from the complex. No inoperable vehicle is to be repaired on the complex property. Unused or non-functional vehicles will be towed away at the owner's expense after proper notice according to state law.

(9) Schedules of community and public transportation, if available, will be posted in the office and discussed with applicants at the time of receipt of their application.

(10) If you are receiving subsidy from a non-Agency source you will be required to furnish any information necessary to stay in compliance with the subsidy provider's requirements.

(11) An adult person(s) making recurring visits or one continuous visit of 14 days and nights in a 45 day period, without consent of management, will be considered as a household member(s) and be added to the lease.

(12) If you wish to request a reasonable accommodation you should make your request in writing to the Site Manager who will forward your request to management for action.

_____                     _____
Tenant                                                Site Manager

       4.1.13                                                4.1.13
_____                                      _____
Date                                                  Date



ARBOW Management Co. Inc. does not discriminate on the basis of handicapped status in the admission or access to, or treatment or employment in, its federally assisted programs and activities.



## SUMMARY OF TENANT RIGHTS

As a resident in Rural Development's multifamily housing, you should be aware of your rights, which are as follows:

1. The right to live in decent, safe, and sanitary housing.

2. The right to have repairs performed in a timely manner, upon request, and to have a quality maintenance program run by management.

3. The right to be given reasonable notice, in writing, of any non-emergency inspection or other entry into your apartment.

4. The right to organize as residents without obstruction, harassment, or retaliation from property owners or management.

5. The right to post materials in common areas informing other residents of their rights and of the opportunities to involve themselves in their project.

6. The right, which may be subject to a reasonable, Rural Development approved fee, to use appropriate common space or meeting facilities to organize or to consider any issue affecting the condition or management of the property.

Oct 22 2015 2:14PM HP Fax                                   page 6

```
4350.3 REV-1
```
                                                                    Appendix 4-A

### MODEL LEASE FOR SUBSIDIZED PROGRAMS

1. **Parties and Dwelling Unit: 11**   The parties to this Agreement are _Amory Rentals LP_ referred to as the Landlord, and _Cynthia Fuller_ referred to as the Tenant. The Landlord leases to the Tenant(S) unit number _11_, located at _1100 Lee Avenue Amory Rentals MS 38821_ in the project known as _Amory Rentals, LP_.

2. **Length of Time (Term):**   The initial term of this Agreement shall begin on _4/1/13_ and end on _3/31/14_. After the initial term ends, the Agreement will continue for successive terms of one _YEAR_ each unless automatically terminated as permitted by paragraph 23 of this Agreement.

3. **Rent:**   The Tenant agrees to pay $ _ᴓ_ for the partial month ending on _N/A_. After that, Tenant agrees to pay a rent of $ _130~_ per month. This amount is due on the _1ST_ day of the month at _Amory Rentals, LP in person @ 1100 Lee Ave #8 Amory MS by mail: 2210 Crabapple Dr. Tupelo MS 38801_ The Tenant understands that this monthly rent is less than the market (unsubsidized) rent due on this unit. This lower rent is available either because the mortgage on this project is subsidized by the Department of Housing and Urban Development (HUD) and/or because HUD makes monthly payments to the Landlord on behalf of the Tenant. The amount, if any, that HUD makes available monthly on behalf of the Tenant is called the tenant assistance payment and is shown on the "Assistance Payment" line of the **Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures** form which is Attachment No. 1 to this Agreement.

4. **Changes in the Tenant's Share of the Rent:**   The Tenant agrees that the amount of rent the Tenant pays and/or the amount of assistance that HUD pays on behalf of the Tenant may be changed during the term of this Agreement if:

   a. HUD or the Contract Administrator (such as a Public Housing Agency) determines, in accordance with HUD procedures, that an increase in rents is needed;

   b. HUD or the Contract Administrator changes any allowance for utilities or services considered in computing the Tenant's share of the rent;

   c. the income, the number of persons in the Tenant's household or other factors considered in calculating the Tenant's rent change and HUD procedures provide that the Tenant's rent or assistance payment be adjusted to reflect the change;

   d. changes in the Tenant's rent or assistance payment are required by HUD's recertification or subsidy termination procedures;

Oct 22 2015 2:09PM HP Fax            page 2



CARRINGTON
MORTGAGE SERVICES

Customer Service 1-800-561-4567 Mon - Fri 8:00AM to 8:00PM Eastern Time
Refinance Inquiries 1-888-267-0584 Mon - Fri 9:00AM to 9:00PM Eastern Time
Visit us online at: www.carringtonms.com

P.O. Box 3489 • Anaheim, CA 92803

## Mortgage Statement

0045133  01 AB 0.413 **AUTO  T6 1 9885 38821-470801  -C01-P45178-I  4 6

UNSELD B PARKS
401 PARKVIEW ST
AMORY MS 38821-4708

| | |
|---|---|
| Statement Date | 10/01/15 |
| Account Number | |
| Property Address | |
| 401 PARKVIEW ST | |
| AMORY MS 38821 | |
| Payment Due Date | 11/01/15 |
| **Amount Due** | **$855.31** |

If payment is received after 11/16/15, a $23.26 late fee will be charged.

### Account Information

| | |
|---|---|
| Outstanding Principal | $80,488.37 |
| Deferred Balance(s) | N/A |
| Escrow Balance | $2,306.29 |
| Suspense Balance | $0.00 |
| Negative Amortization Balance* | N/A |
| Interest Rate | 6.50% |
| Maturity Date | 03/01/2037 |
| Modification Date | N/A |
| Prepayment Penalty | No |

### Explanation of Amount Due

| | |
|---|---|
| Principal | $145.53 |
| Interest | $436.98 |
| Escrow (Taxes and/or Insurance) * | $273.80 |
| Other | $0.00 |
| Regular Monthly Payment | $855.31 |
| Total Fees Charged | $0.00 |
| Overdue Payment | $0.00 |
| **TOTAL AMOUNT DUE** | **$855.31** |

### Past Payment Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $144.75 | $1,294.85 |
| Interest | $436.76 | $3,959.18 |
| Escrow (Taxes and/or Insurance) | $273.80 | $2,529.01 |
| Fees and Charges | $0.00 | $0.00 |
| Unapplied Funds | $0.00 | -$50.10 |
| Total | $855.31 | $7,782.64 |

Please see the reverse side of this statement for additional information.

### Transaction Activity 09/02/15 to 10/01/15

| Date | Description | Amount | Principal | Interest | Escrow | Late Charge | Suspense | Miscellaneous |
|---|---|---|---|---|---|---|---|---|
| 09/29 | Mortgage Payment Applied | $855.31 | $144.75 | $436.76 | $273.80 | $0.00 | $0.00 | $0.00 |

### Special Messages

**Announcing CMS Direct Pay Service!**

We're now able to draft your payment from your checking or savings account automatically every month. This program can save you time and give you peace of mind knowing your monthly mortgage payments are taken care of. Please call our Customer Service department at (800) 561-4567 to see if you qualify.

## STATEMENT OF FACTS

The following statement was made by Unseld B. Parks.

on 5-30-13 _____ while located at MCSO _____

Case Number _____

(UP) All the drugs that was found was At my house and guns are mind Unseld Parks I am soldly responsable for everything that went on yesterday Tommy Smith had nothing to do with any thing to do with the reason I ran I got scared when he said that he would get sent back to jail so I was trying to let him get out of car so he wouldn't have his name in any of my shit I threw the jars out of car Tommy didn't no they were in car tell till I threw them out. (UP)

(UP)

(UP)

The above statement which consists of _____ page(s) was made by me voluntarily and it is true and correct to the best of my knowledge.

Witness: Eric Sloan

Signed: Unseld Parks

Date: 5/30/13

EXHIBIT
B

15

# CRIMINAL AFFIDAVIT

## STATE OF MISSISSIPPI, MONROE COUNTY

Before me, _____, Justice Court Judge/Clerk,

Eric Sloan makes affidavit that Cynthia Fuller did on

or about the ___29th___ day of ___May_ 2013___ in the County aforesaid

in said Justice District, did willfully, unlawfully, feloniously, after having been convicted

of a felony under the laws of the state of Mississippi to wit:

On December 7th 1994 charged with Possession of Controlled, in the Circuit

Court of Monroe County did possess a firearm at 401 Parkview Street, Amory, MS.


Weapon, Possession of by Felon: 97-37-5

*Eric Sloan*
**Affiant**

Sworn to and subscribed to this the _31st_ day of

_May_____, **2013.**

*Robert Faulkes*
**Justice Court Judge**

24



# CRIMINAL AFFIDAVIT

## STATE OF MISSISSIPPI, MONROE COUNTY

Before me, _____, Justice Court Judge/Clerk,

Eric Sloan makes affidavit that Cynthia Fuller

did on or about the 29th May 2013_ in the County aforesaid

In said Justice District, did willfully, unlawfully, and feloniously possess

a Schedule I controlled substance Marijuana having a

weight of 33 gram of Marijuana at 401 Parkview Street

Amory, Ms. 38821.

In Monroe County against the peace and dignity of the State of Mississippi.

TO WIT: POSSESSION OF A CONTROLLED SUBSTANCE 41-29-142 with in 1500 ft of a church
(Harvest Temple Church of God 1321 Hatley Rd.)

_Eric Sloan_
**Affiant**

Sworn to and subscribed to this the ___31st___ day of
May ___, 20 13

_Robert Faulkes_
**Justice Court Judge/ Clerk – Monroe County, MS**



22

INDICTMENT

THE STATE OF MISSISSIPPI          CIRCUIT COURT

MONROE   COUNTY                   VACATION TERM,  2013

                                  CAUSE NO. CR2013-225

      The Grand Jurors for the State of Mississippi, taken from  the body of good and lawful men and women of MONROE COUNTY, in the State of Mississippi, elected, impaneled, sworn and charged to inquire in and for said County and State aforesaid, in the name and by the  authority of the State of Mississippi, upon their oaths present:  That

    UNSELD BRAZIL PARKS and CYNTHIA VERDISE FULLER

CT I: in said County and State on or about the 29th day of May, A.D., 2013, did willfully, unlawfully and feloniously possess with intent to sell, barter, transfer, manufacture, distribute or dispense a quantity of marijuana, a Schedule I Controlled Substance, said quantity being greater than 30 grams but less than 1 kilogram, within one thousand five hundred feet of a building or outbuilding of a church or within one thousand feet of the real property comprising such church which is commonly known as Harvest Temple Church of God, Amory, Mississippi, in violation of the Uniform Controlled Substance Act of the State of Mississippi, Mississippi Code Annotated, Section 41-29-139(a)(1)(b)(4);



EXHIBIT
E

CYNTHIA VERDISE FULLER

CT II: in said County and State on the 29th day of May, A.D., 2013, did willfully, unlawfully and feloniously, after having been convicted of a felony under the laws of this State or any other State, to wit: having previously pled guilty December 7, 1994 to Possession of Control Substance in the Circuit Court of Monroe County, Mississippi in Cause Number cr95-026; did possess a firearm to wit: a Kassman .38 caliber pistol, in violation of Mississippi Code Annotated Section 97-37-5;

contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Mississippi.

Filed and Recorded _____ day

of _____, 2013

Judy K. Butler, Clerk by,

_____, D.C.

Assistant District Attorney

**A TRUE BILL**

_____

Foreman of the Grand Jury

min:  0            II: 1 yrs/0
max:  20yrs/$30k        10 yrs/$5k

2

IN THE CIRCUIT COURT OF _Monroe_ COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

VS.                                                    CAUSE NO. CR _13-225_

_Cynthia Verdice Fuller_

### MOTION TO NOLLE PROSEQUI

Comes now the State of Mississippi and moves the Court for an Order to Nolle Prosequi the above styled and numbered cause, and for cause would show unto the Court that because of the special circumstances of this case, the interest of justice would best be served by Nolle Prossing the said cause as to the defendant named above.

WHEREFORE PREMISES CONSIDERED, the State moves for an Order to Nolle Prosequi in the above styled and numbered cause as to the defendant named herein.

RESPECTFULLY SUBMITTED this _a24_ day of _November_ _2015_

_____

ASSISTANT DISTRICT ATTORNEY



EXHIBIT

F

IN THE CIRCUIT COURT OF _Monroe_ COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

VS.                                    CAUSE NO. CR _12-245_

_Cynthia Louvise Fuller_

### ORDER TO NOLLE PROSEQUI

This cause this day came on for hearing on Motion of the State of Mississippi for an Order to Nolle Prosequi the above styled and numbered cause. The Court, being advised in the premises, finds the Motion well taken and that the same should be, and hereby is, sustained.

It is therefore ORDERED AND ADJUDGED that the above styled and numbered cause is Nolle Prossed as to the Defendant named above.

ORDERED AND ADJUDGED this the ___9th___ day of _November_ _2015_

_____
CIRCUIT JUDGE



EXHIBIT
G

On the afternoon of September 1st 2015 Monroe County Investigators Rodney Stalling and Brandon Davis briefed Monroe County Chief Deputy Curtis Knight and myself that during an interview of Stephanie Herring, a suspect in an Home Invasion/Burglary case of $235,000.00 in cash that Stephanie Herring made allegations that Monroe Deputy Narcotics Officer Sloan had made improper advances towards her sexually and also that he tried to extort her into collecting $10,000.00 in cash from one of the suspects, BJ Williams to give to Deputy Sloan in order for Deputy Sloan to take his kids to Disney World. Stephanie stated that on 2 separate occasions that she traveled to a hotel in Booneville and met with BJ Williams and asked for the $10,000.00 but was unsuccessfull in getting the money because BJ Williams advised her that he had been robbed of that money he stole.

Stephanie Herring alleges that she told Deputy Sloan on the night that he was shot that she had told him that she knew $80,000.00 in cash was being stored in a trailer of a guy named Brandon on CR 1203 or 1208 in Nettleton if he wanted to get that money or some of it.

Stephanie Herring also alleged that she called Deputy Sloan a few days after he was shot and asked him how he was doing to which she states he replied "Fine". Stephanie Herring then states she stated to Deputy Sloan "Please tell me that you were not shot about that information that I gave you that night".
Stephanie Herring advised that Deputy Sloan stated to her "I plead the 5th on that subject I am not going to discuss it on the telephone.

Stephanie Herring was taken to Starkville MBI Office on September 2nd 2015 and voluntarily submitted to a polygraph exam in which she was scored as being truthful to all the relevant questions about the incidents she alleges on Deputy Sloan and the statement that she provided.

On 09-02-2015 Monroe County Chief Deputy Curtsi Knight provided Stephanie Herring with a digital recording device to obtain any possible phone call conversations between herself and Deputy Sloan.
Stephanie Herring advised after a couple of weeks she had attempted conversation by sending text messages to Deputy Sloan but that he had only called her one time and that he did not say anything incriminating.

Statement of
Kenny Bailey





**Confidential**

**Lafayette Instrument Company**

Polygraph Examination Report

| Personal Information | | Photo |
|---|---|---|
| Name: | Stephanie Herring | |
| Date of Birth: | ▓▓▓▓▓▓ | Age: 24 |
| Social Security: | ▓▓▓▓▓▓ | Driver's License: ▓▓▓▓▓▓ |
| Address: | 312 Dalrynple Drive | |
| | Amory, MS 38821 | |

| Exam Information | | Fingerprint |
|---|---|---|
| Exam Location: | Troop G | |
| Exam Date: | 09-02-2015 | |
| Case #: | | |
| Examiner: | cbane | |
| Final Call: | NDI | |

## Section 1: Purpose of Examination

The main issue under consideration for the polygraph examination was whether or not the examinee was telling the truth to the pertinent questions listed under Section 3 of this report.

## Section 2: Pre-Test Interview

On 09-02-15, Stephanie Herring arrived and voluntarily submitted to a polygraph examination. The following forms were read, completed, and voluntarily signed by the examinee:

- Polygraph Consent Form
- Polygraph Waiver Form

During the pre-test interview, Stephanie Herring read the forms and said she understood the forms and signed them agreeing to the test and waiving the rights set forth in the documents. In the opinion of the examiner, Stephanie Herring was suitable for polygraph testing.

At the conclusion of the pre-test phase of the polygraph examination, the examiner discussed and thoroughly reviewed all the test questions with the examinee. The purpose of this detailed review is to provide the examinee an opportunity to ensure she completely understands the questions before the onset of the testing phase of the examination.

## Section 3: In-Test Phase

A Lafayette computerized polygraph system, model LX4000 was used for the collection of polygraph tests (test data). This instrument makes a continuous recording of autonomic responses associated with respiration, electrodermal activity, and cardiovascular functioning. The instrument also includes sensors designed to record peripheral behavior activity and cooperation during the examination. A functionality check prior to the examination confirmed the instrument was in proper working order.

EXHIBIT



**Confidential**

**Lafayette Instrument Company**

Polygraph Examination Report

The following pertinent questions were asked during the polygraph examination.

- R5: Did you lie in any part of your statement you just wrote? No
- R7: Did you lie in any part of your statement you just wrote about Eric Sloan? No
- R10: Did you lie about Eric Sloan's actions for any reason? No

## Section 4: Result

It is the opinion of this examiner Stephanie Herring **was** being truthful during testing.

## Section 5: Post-Test Interview

During the post-test phase of the exam, Stephanie Herring was informed of the test results.

cbane
**Polygraph Examiner**

C-11

Increase conversion with a seamless checkout experience

Learn More

# Monroe County deputy shot overnight

A Monroe county deputy is recovering after being shot early this morning.

**By Kaitlin Howell (http://wjtv.com/author/wjtvkaitlinhowell/)**
Published: August 24, 2015, 7:36 am | Updated: August 24, 2015, 4:23 pm



MONROE COUNTY, Miss. (WCBI) – Authorities in Mississippi say a motorcyclist shot a Monroe County deputy during a traffic stop early Monday morning.

Authorities say they expect Deputy Eric Sloan to fully recover from the gunshot wound to his chest area. He was wearing a protective bullet-proof vest, which saved his life.

Officials say the suspect got away on a red speed bike with no license plate. ⊙ Follow



EXHIBIT
J

Follow
"WJTV.com"

The Monroe County Sheriff Cecil Cantrell released a statement saying that Deputy Sloan pulled over the motorcycle for speeding. He says when Sloan walked up to the motorcycle, the driver started shooting.

**WJTV**

All content © Copyright 2000 - 2015 Media General Communications Holdings, LLC. A Media General Company.

Powered by WordPress.com VIP (https://vip.wordpress.com/)

○ Follow

**Follow**
**"WJTV.com"**