IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**CYNTHIA VERDISE FULLER**                                                         **PLAINTIFF**

**V.**                                          **CAUSE NO. 1:16-CV-14-GHD-DAS**

**ERIC SLOAN, in his Individual Capacity; and**
**MONROE COUNTY, MISSISSIPPI**                              **DEFENDANTS**

**DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

      **COME NOW** the Defendants, **ERIC SLOAN, IN HIS INDIVIDUAL CAPACITY AND MONROE COUNTY, MISSISSIPPI**, by and through counsel, and file this Memorandum Brief in Support of its Motion for Summary Judgment [Doc. 42] and in support thereof, state as follows:

**PREFACE**

      The only issue of merit involved in this case is whether probable cause existed for Sloan to arrest Fuller at the moment of arrest as objectively determined under the Fourth Amendment to the United States Constitution. As will be shown below, under the totality of the circumstances surrounding the encounter, probable cause clearly and objectively existed for Fuller's arrest. As such, Fuller, who seeks to recover "actual and punitive damages for arrest and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments," has failed to provide any factual support, or even coherent allegations, specifically implicating a case of liability under the objective standards of the Fourth Amendment. Therefore, summary judgment is appropriate under these circumstances as Fuller is unable to support a central element of her §1983 claim. Further, because probable cause existed for the arrest, qualified immunity attaches, and Sloan and

Monroe County are thus insulated from suit.[1] Finally, Fuller has failed to implicate this Court's supplemental jurisdiction over any form of state law claims. Even so, to do so would be an exercise in futility due to the gravamen of the issue being whether probable cause existed for a valid Fourth Amendment arrest.

## PLAINTIFF'S COMPLAINT

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, Plaintiff's Complaint avers that "[t]his Court has federal question jurisdiction under 28 U.S.C. §1331, and civil rights jurisdiction 28 U.S.C. § 1343, for a cause of action authorized by 42 U.S.C. §1983." (Exhibit A ¶3.) No claims have been made under state law, and the Complaint makes no averment of supplemental claims pursuant to 28 U.S.C. §1367. Plaintiff Fuller's Complaint seeks "to recover actual and punitive damages for arrest and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution". (Exhibit A ¶3.)

Plaintiff Fuller's Complaint invites baseless speculation stating "[e]ven though there was no evidence that Plaintiff possessed the gun or the marijuana, Plaintiff was indicted by a Grand Jury. Since there was no evidence against Plaintiff, this Indictment could have only been based upon false information." (*Id.*) Yet, probable cause is established by both independent intermediary and by the existence of arguable probable cause objectively arising from the fact Plaintiff Fuller had illegal drugs in her underwear drawer and with her personal belongings by her bedside. (Exhibit B.)

---

[1] "It is thus apparent that it is the plaintiff, rather than the defendant, who must do most of the 'heavy lifting' in the qualified immunity context." See Anderson v. Marshall County, 2013 U.S. Dist. LEXIS 58750 (Mills, D.J.)(Opinion issuing qualified immunity order for defendant sheriff where the plaintiff failed to provide any factual evidence, affidavit, or allegations specifically implicating him as an actor.)

Plaintiff also alleges that Defendant Sloan made racial slurs against her during the interaction at the residence where guns and drugs were found pursuant to a duly authorized search warrant obtained by another officer from a judge within his jurisdiction. (Exhibit A ¶9). Yet, these disputed allegations are merely intended to taint an arrest which must ultimately be judged under an objective Fourth Amendment Standard and distract from the underlying issue.

Finally, Plaintiff attempts to improperly inject an element of dispute between the parties by erroneously pleading that the mandates of the Mississippi Tort Claims Act modify Official Capacity Liability in spite of the express rule of law under Monell precluding respondeat superior as a viable theory under 42 U.S.C. §1983. (Exhibit A ¶23.) In any event, this is a proper issue for resolution at the motion for summary judgment stage as it is purely a question of law.

## **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard further provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; which requires that there be no genuine issue of *material* fact. *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 276 (5th Cir. 1987).

Materiality of a fact is determined by the substantive law at issue. *Id.* Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* Factual disputes that are irrelevant or unnecessary will not be counted. *Id., see generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure* § 2725, pp.

93–95 (1983). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam ), *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 1592 (1968).

## **FACTS**

On or about May 29, 2013, multiple officers with the Monroe County Sheriff's Department pursued a vehicle now known to be driven by Unseld B. Parks. (*See* Exhibit B.) Ultimately a stop took place and Parks was detained, along with his passenger, Tommy Smith. (*Id.*) During this detainment, Parks admitted to the deputies that he had thrown some marijuana out of the window. (Exhibit B.) Having this information and prior knowledge that Parks had previously sold marijuana from his residence, the Monroe County Sheriff's Department Deputy Ed Maher went and obtained a search warrant for the Parks' residence while Deputy Eric Sloan went to secure the Parks residence. (Exhibit B.)

When Deputy Sloan arrived at Parks' residence, he viewed a female, now known to be Cynthia Fuller, on the front porch of the residence. (Exhibit B, Exhibit C.) Fuller inquired what was wrong and in response to Sloan's inquiry as to whether she was legally married to Parks. (Exhibit B, Exhibit C.) Fuller stated that she also lived at the premises and had been in a relationship/married to Parks for approximately sixteen (16) years. (Exhibit B, Exhibit C, Exhibit D p. 27, line 24 to p. 28, line 7) Deputy Sloan then advised Fuller that Parks had been involved in a car chase and that he had been arrested. (Exhibit B.) Sloan also told Fuller that a search warrant for the residence was on its way, that he was present to secure the premises, and that over her objection, she could not enter the premises. *Id.*

Due to the closeness in proximity, Amory Police Department Officers Mike Reeves and Dawn Wise arrived to assist with the securing of the premises. (Exhibit B, Exhibit C, Exhibit E.) Neighbors and other individuals in the area began to come onto the property and were advised to stay away. (Exhibit E.)

Soon thereafter, Deputy Maher and other deputies with the Monroe County Sheriff's Department ultimately arrived with a search warrant. (Exhibit F.) A copy of the warrant was given to Cynthia Fuller, and a search of the Parks premises took place. (Exhibit B.) During the search, marijuana was found in the master bedroom (inside of a jar located in Fuller's clothes/panty drawer) and two (2) handguns were found in the master bedroom closet. (*Id.*.) Also found during the search were items commonly used in drug sales/drug paraphernalia, including a digital scale and three (3) boxes of sandwich bags. (*Id.*) In the living room closet, a glass jar filled with marijuana and wrapped in plastic bags was discovered. (*Id.*) The alleged marijuana (31.0 grams of substance) was ultimately tested by the Tupelo Crime Lab and determined to be marijuana. (Exhibit G.)

Cynthia Fuller was brought in to view the findings. (Exhibit E.) Amory Police Officer Dawn Wise was the only female law enforcement present at the time, and she was tasked with conducting a bodily exam/pat-down of Fuller. (*Id.*) Once this was done, Fuller was arrested and ultimately transported to the Monroe County Detention Center in Aberdeen. (Exhibit B, Exhibit E.)

On May 31, 2013, Parks signed a Statetment of Fact admitting that the drugs that were found at his house and which were thrown out of his car during the chase belonged to him, and that Tommy Smith had nothing to do with the events. (Exhibit H.) Later, during his deposition testimony in connection with this case, Parks denied the drugs were his. (Exhibit I p. 26 l. 4-9.) Be that as it may,

5

there was no admission as to the drug paraphernalia or two (2) weapons. (*Id.*)² Due to the culmination of the facts that Fuller stated to Sloan that she was married to Parks, (Exhibit C), that she resided at the residence (Exhibit B, Exhibit C), her prior felony charges (Exhibit J), uncertainties surrounding the ownership of the drugs, drug paraphernalia, and weapons found at the residence, criminal affidavits and charges were brought against Fuller (and Parks), and a Monroe County Justice Court judge found they were sufficient. (Exhibit K.). The Monroe County District Attorney's Office presented the information to a grand jury and an indictment was returned on or about December 13, 2013, in Cause No. CR2013-225 (Exhibit L, Exhibit M.) On November 9, 2015, an Order to Nolle Prosequi was entered on the charges against Fuller. (Exhibit N.)

## 1983 LIABILITY

Section 1983 of the U.S. Code imposes liability upon any person who, acting under color of state law, deprives another of a federally protected right. 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead, provides civil remedies for deprivations of rights established under the Constitution or federal laws. *Mabry v. Lee County*, 100 F. Supp. 3d 568, 572 (N.D. Miss. 2015) (citing *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004)). To recover under section 1983, a plaintiff must 1) identify such deprivation and further, 2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994)) (alteration in original).

---

²See *Bryant ex rel. Bryant v. City of Ripley, Miss.,* No. 3:12-CV-37-B-A, 2015 WL 686032, at *4 (N.D. Miss. Feb. 18, 2015) (noting that uncorroborated statements from an accomplice can establish probable cause)(citing *Brown v. Hill*, 438 Fed. Appx. 336, 337 (5th Cir.2011).

6

**1. Summary Judgment is Proper as Arrest Was Based on Probable Cause**

Part of Fuller's 1983 claim is based on an alleged unlawful arrest due to lack of probable cause in violation of the Fourth Amendment. For Fuller to succeed on such a claim, she must demonstrate that no probable cause existed for the arrest. *Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir. 2001)*, Tate v. Sharp*, 2013 WL 664865 *6 (N.D. Miss. 2013). However, because probable cause objectively existed for the arrest, Fuller's claim must fail.

"The Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released." *Dingler v. City of Southaven*, 2009 WL 902045, *4 (N.D. Miss. 2009) (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)) A law enforcement officer may lawfully arrest a person under two conditions: 1) when the officer possess a warrant for arrest supported by probable cause and issued by a magistrate, and 2) when a felony has been committed and probable cause exists to believe the person proposed to be arrested committed it. *Canfiled v. Chappel,* 817 F.2d 1166, 1168 (5th Cir. 1987), *Dingler*, 2009 WL 902045 at*4. It is well established that probable cause exists "when the totality of the facts and circumstances within [an official's] knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)(quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). The probable cause requirement does "not demand any showing that such a belief is correct or more likely to be true than false." *Dingler*, 2009 WL 902045 at *4 (citing *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1990)). The arresting officer's state of mind is irrelevant to the analysis. *Devenpeck v. Alford*, 543 U.S. 146 (2004). Instead, the existence

of probable cause is determined by the objective standards of the Fourth Amendment rather than the subjective state of mind of the officer. *Id.*

Here, without a doubt, probable cause existed for Defendant Sloan to arrest the Plaintiff. The Deputy Sloan had already undergone a vehicular chase with Unseld Parks where Parks had thrown marijuana out of the window along the roadside, (Exhibit B); Plaintiff was at the residence when officers arrived, (Exhibit B, Exhibit C); Plaintiff attempted to enter the residence after being lawfully instructed not to, (Exhibit B); Plaintiff stated to Defendant Sloan that she lived there and was married to Parks (Exhibit B, Exhibit C); marijuana was found in the master bedroom in Plaintiff's undergarment drawer and in the living room closet, both common areas of the house frequented by Ms. Fuller (Exhibit B, Exhibit D p. 44 l. 15-20); and a gun was found in the area where Plaintiff kept her medications (Exhibit B, Exhibit E). Each of these taken alone do not amount to any probable cause. However, when each is considered in conjunction with one another, probable cause existed to arrest the Plaintiff.

According to Plaintiff Fuller's own deposition testimony, when Defendant Sloan arrived at Park's residence, and prior to the initiation of the search warrant, the circumstances were already at a heightened/aggravated level. (Exhibit D p 32, l. 16 to p. 33 l.7.) Defendant Sloan approached the residence, and told Fuller she could not enter the residence because a search warrant was on its way. (Exhibit B, Exhibit C.) After this lawful instruction, Fuller again attempted to gain entry into the house, and again Sloan told her she could not enter the residence. (Exhibit B.) Sloan also asked Fuller if she was legally married to Park to which she replied she was, and that the residence was her house and she lived there. (Exhibit B, Exhibit C,) *See Jordan v. State*, 158 So. 3d 348, 351 (Miss. 2014) (reaffirming the Mississippi Supreme Court's long standing holding that one in possession of

8

premises upon which contraband is found is presumed to be in constructive possession of the contraband). Finally, after the search warrant arrived, and the search was completed, marijuana was found in the master bedroom in a dresser drawer containing Fuller's undergarments. (Exhibit B,), *see Jordan*, 158 So. 3d 348, 351 (Miss. 2014) (observing that while criminal defendant did not live in the residence alone, and that additional incriminating circumstances were required to prove constructive possession, which was met where defendant admitted to occupancy of house, a recent drug sale occurred at house, he and girlfriend shared master bedroom were drugs were found, his physical proximity to drugs when they were found, and unexplained possession of large amounts of cash).

Based upon these facts, the only facts known to Sloan at the time of Fuller's arrest, probable cause for arrest clearly existed. Indeed, when the facts are viewed the in the light most favorable to Fuller, her claim that Sloan violated her Fourth Amendment right to be free from unreasonable seizure fails as she is unable to establish that Sloan lacked probable cause to arrest her, an element essential to her case and on which she bears the burden of proof at trial. *See Gordy v. Burns*, 294 F. 3d 722, 725 (5th Cir. 2002). Therefore, Summary Judgment is proper on this 1983 claim.

### 2. There is No Alternative Analysis At Issue

Plaintiff Fuller's Complaint seeks "to recover actual and punitive damages for arrest and malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution". (Exhibit A ¶1). As such, there are no allegations of violations of procedural due process or substantive due process alleged.

Procedural due process hinges upon deprivation of a liberty interest arising from the Due Process Clause itself and the laws of the States. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S. Ct. 864,

9

868-69, 74 L. Ed. 2d (1983) (citing *Meachum v. Fano,* 427 U.S. 215, 223–27 (1976)). The Supreme Court has recognized that while an individual does have a liberty interest in being free from incarceration absent a criminal conviction, they may be deprived of this interest pretrial if the deprivation comports with the requirements of due process. *Baker v. McCollan,* 443 U.S. 137, 144 (1979) (although plaintiff "was indeed deprived of his liberty for a period of days," the deprivation was accomplished by due process).

Here, a valid search warrant preceded the conduct a search of the residence, (Exhibit F), and Ms. Fuller, who admitted occupancy of the residence, (Exhibit B, Exhibit C), was arrested pursuant to arguable probable cause (Exhibit B). Further, on May 31, 2013, soon after Fuller's arrest, Ms. Fuller was brought before the Justice Court Judge for a determination of probable cause. (Exhibit K.) Finally, on December 13, 2013, a grand jury, which necessarily must make a determination of probable cause, indicted Fuller based upon the evidence presented to it by the District Attorney's Office. (Exhibit L, Exhibit M.) Therefore, no procedural due process issues are present in this matter. Even so, any allegations of lack of procedural due process are subsumed by her Fourth Amendment unlawful arrest Claim. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994).

In a related vein, substantive due process under the 14th Amendment requires that the complained of conduct meet the "shocks the conscience" test for constitutionally arbitrary executive action. *Rochin v. California,* 342 U.S. 165, 172–73 (1952); see also *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998). However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor,* 490 U.S. 386 (1989)).

An arrest is a seizure and necessarily implicates the Fourth Amendment. Therefore, established precedent directs the Court to consider the more particularized Fourth Amendment analysis. See *Graham,* 490 U.S. at 395, 109 S. Ct. 1865. By virtue of its "incorporation" into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. *Gerstein v. Pugh,* 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). The state has met this requirement because soon after Ms. Fuller was arrested, a probable cause determination was held before a justice court judge, who found that probable cause for the arrest existed. (Exhibit K.) Further, the District Attorney presented the case to the grand jury who returned a "true bill," necessarily finding that probable cause did indeed exist. (Exhibit L, Exhibit M.)

Therefore, in light of the fact that the far more stringent burden under the 4th Amendment controls, Plaintiff Fuller must attempt to sustain her claim under the 4th Amendment, a feat which she is unable to accomplish due to the existence of probable cause.

### 3. Independent/Impartial Intermediary

The doctrine of independent/impartial intermediary dictates that "[i]f facts supporting an arrest are placed before an independent intermediary, such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for [claims of] false arrest, insulating the initiating party. *Glenn v. City of Tyler*, 242 F.2d 307, 313 (5th Cir. 2001)(see also, *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). The chain of causation is broken only where all facts are presented to the independent intermediary, or where the malicious motive of the law enforcement officials does

not lead them to withhold any relevant information from the independent intermediary. *Id*. (See also, *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)). This rule applies even if the independent intermediary's action occurred after the arrest, such as when the arrestee is taken before a magistrate, and even if the arrestee was never convicted of any crime. *Buehler v. City of Austin/Austin Police Dept.*, 824 F.3d 548, 555 (5th Cir. 2016). Under this doctrine, "even an officer who acted with malice... will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)).

Here, not one, but two independent intermediaries reviewed the arrest of Ms. Fuller, and both found that probable cause existed. (Exhibit K, Exhibit M.) Soon after Ms. Fuller's arrest, she was taken before a justice court judge who determined that probable cause existed to arrest Fuller. (Exhibit K.) In addition, the case against Ms. Fuller was presented to the grand jury, who returned a "true bill" indictment against Ms. Fuller, necessarily finding that probable cause existed for Ms. Fuller's arrest. (Exhibit M.)

Additionally, Fuller's Complaint states, admittedly without factual basis, that "[e]ven though there was no evidence that Plaintiff possessed the gun or the marijuana, Plaintiff was indicted by a Grand Jury. Since there was no evidence against Plaintiff, this Indictment could have only been based upon false information." (Exhibit A ¶14). However, this sort of generalized speculation has been previously rejected by this Court and others.

In *Taylor v. Gregg,* 36 F.3d 453, 457 (5th Cir. 1994), the court held that allegations of malice are not sufficient to overcome the defense. In that case, like here, the Plaintiff contended that

the intermediaries findings were based on false and misleading information *Id.* at 457 (observing that the intermediary breaks the chain of causation unless it can be shown its deliberations were in some way tainted by the defendants. Once the moving party makes a showing the no genuine issue of material facts exists, the burden shifts to the opposing party who must counter with sufficient evidence showing a genuine issue). Following *Taylor,* this court noted, in a case in which the plaintiff contended the defendants withheld relevant exculpatory evidence, that the doctrine is equally applicable in a malicious prosecution context because the central issue addressed is probable cause. *Sullivan v. Boyd Tunica, Inc.,* No. CIV A 206CV016-B-A, 2007 WL 541619, at *4 (N.D. Miss. Feb. 16, 2007). There, this Court further noted that under *Taylor*, "evidence of tainting must be set forth and that '[m]ere allegations are insufficient.'" *Id.* Furthermore, unless it can be shown that the deliberations of the intermediary were in some way tainted by the actions of the defendant, an independent intermediary breaks the change of causation. *Id.* As was shown in both *Taylor* and *Sullivan,* the impact of the Plaintiff not meeting this burden is dismissal.

In *McAllister v. Desoto County,* 2011 WL 2516260 (N.D. Miss. June 23, 2011)(Aff'd Per Curiam) a narcotics investigation proceeded from purchases by a confidential informant to ultimate indictment and arrest of the wrong person because identification information for "*Connie McAllister*" from a prior arrest was erroneously substituted for the drug-dealing "*Connie Mac*". At the district court level, Judge Aycock applied both the independent intermediary defense and determined that probable cause existed in spite of the error. In affirming summary judgment, the Per Curiam decision simply looked to the later. *McAllister v. Desoto County, Miss.*, 470 Fed. Appx. 313, *5 n. 4 (5th Cir. 2012) (observing that generally, in considering a post-indictment arrest challenge, the arrest is evaluated in light of the indictment, however because the Plaintiff argued her indictment

was improperly obtained due to lack of probable cause, the probable cause to arrest should be examined absent the indictment).

Here, sufficient probable cause exists from the objective facts before the Court, and the independent intermediary defense applies. While it may be contended that the independent intermediary doctrine is limited to qualified immunity, this contention has previously been explicitly rejected by this Court. See *Edmonds v. Oktibbeha Cty., Miss.*, No. 1:09CV00070-B-D, 2010 WL 4942273, at *5 (N.D. Miss. Nov. 30, 2010), aff'd, 675 F.3d 911 (5th Cir. 2012)("*Murray* therefore resolves the implication in Burzynski that a superseding cause defense is unavailable to officers in a Section 1983 case.). Therefore, the doctrine of independent intermediary breaks the chain of causation for false arrest, thus insulating Sloan and the County from liability in this case.

### 4. Qualified Immunity

Pursuant to the Fifth Affirmative Defense in the Defendants' Answer, Defendant Sloan is entitled to qualified immunity from Plaintiff's claims. As noted by the Court in *Hill v. Carroll County, Miss.*, 467 F. Supp.2d 696, 701 (N.D. Miss. 2006), "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an immunity from suit rather than a mere defense to liability and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" *Id* at 701 (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

In addressing a claim of qualified immunity, the court engages in a two part analysis. *Id.* The Court first determines if the plaintiff has alleged a violation of a clearly established constitutional or statutory right. *Id.* If so, the court then decides if the defendant's conduct was objectively reasonable. *Cashwaw v. City of Charleston*, 1996 WL 671681, *2 (N.D. Miss. 1996) (citing *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996). In *Harper v. Harris County, Texas*, 21 F.3d 597, 600 (5ht

Cir. 1994), the court opined that "qualified immunity protects a police officer from liability if a reasonable competent law enforcement officer would not have known that his actions violated clearly established law. The objective reasonableness of the officer's conduct is measured with reference to the law as it existed at the time of the conduct in question. *Id*. (citations omitted).

As has been previously discussed, the standard to be applied in this case is the Fourth Amendment's objective probable cause for arrest standard. As has been shown, at the moment of arrest, probable cause existed to arrest Ms. Fuller given the totality of the circumstances. (Exhibit B, Exhibit K.) Soon after the arrest, a justice court judge determined that probable cause existed for the arrest. (Exhibit K.)Finally, the district attorney's office, after its own investigation, presented the case against Ms. Fuller to the grand jury who returned a "true bill" indictment against Ms. Fuller. (Exhibit L, Exhibit M.) Thus, at each stage of the criminal proceedings, probable cause was objectively found to arrest Ms. Fuller. The only conclusion to be drawn from these facts is that Sloan's conduct, as measured with reference to the law of Fourth Amendment seizure and as it existed at the moment of the arrest, was objectively reasonable. Indeed, three different bodies have determined that probable cause existed, Sloan, a justice court judge and a grand jury. Therefore, Sloan and the County are entitled to qualified immunity against suit in this matter.

### 5. Official Capacity Claims

The foundation of municipal liability under Section 1983 is that a plaintiff must have suffered a constitutional violation as a result of an official policy, custom, or practice promulgated by municipal policymakers. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir.2009).

It is well-established that a city is not liable under § 1983 on the theory of respondeat superior. *Peterson*, 588 F.3d at 847, *see also Bryant ex rel. Bryant v. City of Ripley, Miss.,* No. 3:12CV37-B-A,

2015 WL 686032, at *6 (N.D. Miss. Feb. 18, 2015). A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur. *Peterson*, 588 F.3d at 847. To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Id.*

Official policy establishes culpability, and can arise in various forms. *Id.* It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Id.* A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *Id.* Thus, a plaintiff must show the policy was promulgated by the municipality's policymaker. *Id.* There is no "de facto" final policymaking authority. Id. The plaintiff must also show "either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences." *Id.* (citing *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir.2004). "A showing of simple or even heightened negligence will not suffice." *Id.*

Here, Plaintiff has not alleged that any official policy, custom or practice of the Monroe County Sheriff's department violates federal law or authorizes the deprivation of federal rights with deliberate indifference as to its known or obvious consequences. (*See* Exhibit A ¶1). Indeed, Plaintiff has not even alleged that her deprivation was the result of some mischievous official policy. (*See*

16

*Id.*)Therefore, any claim that the County should be held responsible is unwarranted and should be foreclosed as no official policy is at issue.

## CONCLUSION

Based upon the foregoing authorities and analysis, summary judgment is proper under the undisputed material facts in this case. While some facts may be in dispute, none of these are material to the Court's determination as to the application of the objective standards of the Fourth Amendment with regards to the arrest of Cynthia Fuller, the only issue of merit involved in this case. . Given the totality of the circumstances surrounding the arrest, Detective Sloan clearly had probable cause to affect a lawful Fourth Amendment arrest of Ms. Fuller when drugs were found in the home at which she admittedly resided. Thus, Ms. Fuller is unable to sustain a central element of her claim, that the arrest was unlawful under the Fourth Amendment. Therefore, summary judgment is appropriate in this case.

In addition to the lawfulness of the arrest under th Fourth Amendment, Deputy Sloan is entitled to qualified immunity because the arrest was reasonable under the objective standards of the Fourth Amendment, thus insulating Deputy Sloan and Monroe County from suit. The Defendant has also failed to properly allege any violations of the Fourteenth Amendment or any state law claim. Even so, any Fourteenth Amendment claims arising from the arrest and subsequent detention are subsumed under the more stringent requirements of the Fourth Amendment. Finally, Plaintiff has not alleged that any official policy of the county violates federal law or authorizes or directs the deprivation of federal rights, and is maintained by the county with deliberate indifference as to its known or obvious consequences.

For all of these reasons, the Defendants respectfully request the its Motion for Summary Judgment be granted, and that a Final Judgment be entered in this matter and that this matter be dismissed with prejudice.

**RESPECTFULLY SUBMITTED** this the 24th day of January, 2017.

        **JACKS | GRIFFITH | LUCIANO, P.A.**
        Attorney for Defendants

        By: /s/ *Arnold U. Luciano*
        Arnold U. Luciano, MS Bar No. 99198
        **JACKS GRIFFITH LUCIANO, P.A.**
        P. O. Box 1209
        Cleveland, MS 38732
        Phone No. 662-843-6171
        Fax No. 662-843-6176
        aluciano@jlpalaw.com

## **CERTIFICATE OF SERVICE**

I, Arnold U. Luciano, attorney of record for Defendants Eric Sloan, in his Individual Capacity, and Monroe County, Mississippi, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum Brief in Support of its Motion for Summary Judgment* to be delivered by the ECF Filing System which gave notice to the following Counsel of Record:

> Jim D. Waide, III, Esq.
> WAIDE & ASSOCIATES, PA
> P. O. Box 1357
> Tupelo, MS 38802-1357
> Phone: 662-842-7324
> Email: waide@waidelaw.com
>
> R. Shane McLaughlin
> MCLAUGHLIN LAW FIRM
> P.O. Box 200
> Tupelo, MS 388032-0200
> Telephone: (662) 840-5042
> Email: rsm@mclaughlinlawfirm.com

**DATED** this 24th day of January, 2017.

> /s/ ***Arnold U. Luciano***
> Arnold U. Luciano