IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**CYNTHIA VERDISE FULLER**                                             **PLAINTIFF**

**V.**                                                    Civil Action No.: l:16-CV14-NBB-DAS

**ERIC SLOAN, In his Individual Capacity, and**
**MONROE COUNTY, MISSISSIPPI**                                **DEFENDANTS**

---

**MEMORANDUM BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Cynthia Verdise Fuller submits her Memorandum Brief in Opposition to Defendants' Motion for Summary Judgment as follows:

### I. INTRODUCTION

Defendant Deputy Eric Sloan found Cynthia Fuller sitting on the front porch of her ex-boyfriend's home when Sloan arrived to execute a search warrant on the home. Fuller did not live in the home. Fuller had no access to the home. Fuller had no legal relation to the owner of the home. Despite all of this, Sloan arrested Fuller and charged her with possessing the drugs and a firearm he found inside the home. Despite that there was nothing to indicate that Fuller possessed the contraband, Sloan later secured an indictment against Fuller, which was later *nolle prossed* by the State.

Sloan is liable to Fuller for arrest without probable cause. There was no basis for Fuller's arrest. Sloan argues to this Court that he is not liable because he disputes Fuller's evidence. Sloan's argument in this Court disputes not only Fuller's sworn testimony, but his own testimony as well. However, in any event, Sloan's dispute of facts requires a jury trial, not summary judgment.

As set forth below, Plaintiff concedes summary judgment as to the *Monell* claim against Monroe County in this case. However, summary judgment should be denied as to Defendant Sloan individually as there are triable issues of fact as to the claim against him.

## II. STATEMENT OF MATERIAL FACTS

Cynthia Fuller had a dating relationship with Unseld Parks. (Depo. of Fuller at 8, attached to Pl.'s Resp. as Exhibit "A"). For a time, Fuller lived with Parks at his home located at 401 Parkview Street, Amory, Mississippi. (Depo. of Fuller at 6). The home was owned by Parks, not Fuller. (*See* Mortgage Statement, attached to Pl.'s Resp. as Exhibit "B").

Fuller moved out of the home in December 2012. (Fuller Depo. at 6-7). Fuller and Parks ended their live-in relationship in December 2012 because of Parks' "fidelity problems." (Fuller Depo. at 7). Fuller subsequently rented an apartment for herself in Amory, Mississippi. (*See* Security Deposit Agreement, attached to Pl.'s Resp. as Exhibit "C"). Fuller signed the agreement to lease an apartment on April 1, 2013. (*See* Excerpt of Model Lease for Subsidized Programs, attached to Pl's Resp. as Exhibit "D").

Unseld Parks was arrested by deputies of the Monroe County Sheriff's Department on May 29, 2013, after a pursuit. (*See* Report of Investigation, attached to Pl.'s Resp. as Exhibit "E"). Parks was arrested by Deputies Ed Maher and Eric Sloan. (*Id.*). Maher submitted an Underlying Facts and Circumstances and requested a search warrant for Parks' home. (*See* Underlying Facts and Circumstances, attached to Pl.'s Resp. as Exhibit "F"). Maher also executed an "Affidavit for Search Warrant." (*See* Affidavit for Search Warrant, attached to Pl.'s Resp. as Exhibit "G"). Neither the Affidavit nor the Underlying Facts and Circumstances statement references Cynthia Fuller in any way. (*See* Exhibits "F" and "G"). The Justice Court

issued a search warrant, which likewise made no reference to Cynthia Fuller. (Search Warrant and Return, attached to Pl.'s Resp. as Exhibit "H").

Fuller had heard that her former boyfriend, Parks, was in trouble with law enforcement earlier on May 29, 2013. (Fuller Depo. at 28). Fuller went to Parks' home and sat on the porch to wait for Parks. (Fuller Depo. at 28). Fuller waited outside on Parks. (*Id.* at 28-32). Fuller heard Parks was in an altercation with law enforcement and wanted to "make sure he's not dead." (Fuller Depo. at 32).

Despite gallant attempts at obfuscation during the deposition, it is clear that Cynthia Parks did not live in Parks' home as of May 29, 2013. (*See, e.g.*, Fuller Depo. at 6-7, 38-39). Excerpts of Fuller's testimony illustrate this:

Q. Before [apartment] Number 11 where did you live?

A. I resided at 401 Parkview, Amory, 23 Mississippi, 38821.

Q. All right. Do you remember approximately what year or what month you moved out of 401 Parkview?

A. It was December of 2012.

Q. What was the reason for you moving out in December of 2012?

A. Me and Mr. Parks had -- he had some fidelity problems.

(Fuller Depo. at 6-7).

Fuller testified that she had left some items of personalty at Parks' home. (Fuller Depo. at 38). [1] However, Fuller never stayed overnight in Parks' home after December 2012. (*Id.*). Fuller explained:

---

[1] Fuller testified that she lived with Parks at his home at 401 Parkview and that she did not have a place of her own. (*See, e.g.,* Depo. of Fuller at 28). However, this circumstance ended in December 2012 when Fuller moved out and got her own apartment. (Depo. of Fuller at 6-7, 38-39). From and after December 2012, Fuller did not reside at 401 Parkview. (*Id*).

3

> Q. But you still had stuff in Mr. Parks' house; is that right?
>
> A. Yes.
>
> Q. Did you stay with him off and on occasionally?
>
> A. No.
>
> Q. When did that end?
>
> A. December.
>
> Q. Of?
>
> A. 2012.

(Depo. of Fuller at 38-39).

Parks likewise testified that Fuller had not lived with him for several months as of the date of his arrest. (Depo. of Unseld Parks at 66, attached to Pl.'s Resp. as Exhibit "I"). Parks testified that Fuller had no key to his home and no way into his home. (Depo. of Parks at 66-67). Parks testified that the marijuana and firearm in the home were his, not Fuller's. (*Id.*).

Fuller sat outside Parks' home on the porch until officers arrived at the residence. (Fuller Depo. at 28). Deputy Sloan admitted that Fuller was sitting outside the home on the porch when he arrived. (Depo. of Eric Sloan at 18, attached to Pl.'s Resp. as Exhibit "J"). Fuller intended on waiting on the porch for Parks to come to his home. (Fuller Depo. at 32). Fuller was waiting on the porch when Monroe County Sheriff's Deputies arrived. (Fuller Depo. at 32). Deputy Eric Sloan sat beside Fuller on the porch. (Fuller Depo. at 34). Sloan and Fuller had an unpleasant interaction which included Sloan calling Fuller an "ignorant nigger." (Fuller Depo. at 34).

Fuller continued to sit on the porch while officers searched Parks' home. (Fuller Depo. at 47). Officers found marijuana and a firearm inside Parks' home. (*See, e.g.,* Exhibit "H").

Fuller never stated that she lived with Parks. (Fuller Depo. at 71). Fuller told Sloan "I don't even live here. This is not even my house." (Fuller Depo. at 71). However, nevertheless Sloan arrested Fuller and charged her with possession of marijuana and firearm. (*See* Depo. of Fuller at 50). Sloan signed Criminal Affidavits charging Fuller with possession of a controlled substance within 1500 feet of a church, possession of a controlled substance with intent to distribute, and possession of a firearm by a convicted felon. (*See* Criminal Affidavits attached collectively to Pl.'s Resp. as Exhibit "K"). All of these charges were based on Fuller allegedly possessing contraband which was located inside Unseld Parks' home. (*See id.*).

In Sloan's Brief to this Court Sloan claims that Fuller told him that she lived in Parks' home. (*See, e.g.,* Def.'s Memo Brf. at 4 ("Fuller stated that she also lived at the premises and had been in a relationship/married to Parks for approximately sixteen (16) years."). Not only does Fuller vehemently dispute this, even Sloan testified contrary to this during his deposition. (Sloan Depo. at 4). Sloan testified that Fuller "kept saying that she didn't have anything to do with it. She didn't live there." (Sloan Depo. at 20).

Parks also readily told Eric Sloan that Fuller did not live with him and that all of the contraband was his. (*See, e.g.,* Depo. of Parks at 66-67; Statement of Parks, attached to Pl's Resp. as Exhibit "L"). Parks testified that Sloan attempted to get Parks to implicate Fuller in some wrongdoing. (Depo. of Parks at 68). Parks testified that Sloan instructed him to make sure Fuller did not sue Sloan for what happened at Parks' residence. (Depo. of Parks at 40-41, 68). According to Parks, Sloan told him to "make sure . . . that black bitch don't sue me."). (Depo. of Parks at 71).

Fuller was indicted on the baseless charges. (*See* Indictment, attached to Pl.'s Resp. as Exhibit "M"). The State subsequently moved to *nolle prose* the prosecution and an Order was

5

entered on November 9, 2015. (*See* Order to *Nolle Prosequi*, attached to Pl.'s Resp. as Exhibit "N").

### III. STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine dispute of any material fact and when the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is no evidence to support the non-movant's case and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In ruling on a motion for summary judgment, the Court is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in favor of the non-movant. *Anderson*, 477 U.S. at 255.

The Fifth Circuit has explained:

> The district court's job was not to weigh the conflicting evidence and determine which side was more persuasive, but only to determine whether there was an issue of fact to be resolved by the jury.

*Dunaway v. Cowboys Nightlife, Inc.*, 436 Fed. Appx. 386, 398 (5th Cir. 2011).

### IV. ARGUMENT

A.    **Sloan is Liable for Arresting Fuller without Probable Cause.**

An arrest without probable cause violates the Fourth Amendment and is a basis for liability under 42 U.S.C. § 1983. *See, e.g., Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. Tex. 2003); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). The Fifth Circuit has explained that probable cause exists "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude

that the suspect had committed, or was in the process of committing, an offense." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999).

"For warrantless arrests, the test for whether the 'police officer ha[d] probable cause to arrest [is] if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

As Defendants point out, officers are protected by qualified immunity if they reasonably, but mistakenly, conclude that probable cause is present. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). However, the officer's subjective beliefs are wholly irrelevant. *Mangieri*, 29 F. 3d at 1017. In order to be qualifiedly immune, the officer must show that a reasonable police officer under the circumstances could have concluded that probable cause existed to make an arrest. *See Id.*

Fuller has offered compelling evidence that: 1) she did not live at the residence where the contraband was found; 2) none of the contraband was hers and there was no evidence to establish otherwise; 3) she had no access to the residence and was sitting outside when officers arrived; 4) she was not married to Parks and never told officers otherwise; 5) at all relevant times both she and Parks informed officers that the contraband in Parks' house belonged to Parks, not her.

Sloan disputes some of this proof. In his Brief, Sloan contends Fuller told him she lived in the home and that she was married to Parks. Fuller disputes this and testified that she told all of the officers that she did not live in the home. Sloan also testified in his deposition that Fuller

7

told him she did not live there. In any event, Sloan's dispute of facts does not entitle him to summary judgment. Sloan's disputes in this regard show a genuine issue for trial.[2]

Crediting Fuller's evidence as truthful, which must be done at this procedural posture, there is no evidence whatsoever from which a reasonable officer could find probable cause to arrest Fuller. The fact that Fuller was sitting outside of third party's home on a porch when drugs are found inside the home is not probable cause that Fuller committed any crime. The Fourth Amendment cannot be expanded to justify such an arrest.

**B.      Independent Intermediary Doctrine.**

A grand jury indictment is sufficient to establish probable cause and break the chain of causation "only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). The *Hand* Court explained that "[a]ny misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." *Hand*, 838 F.2d at 1428.

There is no record of the grand jury proceedings which resulted in Fuller's indictment. However, the only conceivable way an indictment could be returned for Fuller possessing the marijuana and firearm is if the grand jury was falsely informed that Fuller lived in the residence or claimed the contraband. Both of these are demonstrably false. Fuller did not reside in the home where the contraband was found and had no access to the home. Even Sloan admits that Fuller adamantly maintained that she did not live in the home at the scene. The indictment is

---

[2] Sloan does not contend that Fuller was committing any offense other than "possessing" the contraband located inside Parks' house. There is no allegation that Fuller was disorderly or failed to comply with officers' commands.

obviously the product of "misdirection" as the facts so overwhelmingly indicate a lack of probable cause to believe Fuller committed any offense.

Further evidence of Sloan's intent to misdirect the grand jury and taint the process is found in Sloan's statements to Parks regarding Fuller. Sloan, ostensibly aware that he arrested Fuller without probable cause, told Fuller that he was to make sure that Fuller did not sue him.

In this case the only possible was to secure an indictment against Fuller for possession of contraband in Parks' home requires a misleading of the grand jury. Accordingly, the independent intermediary doctrine should not be applied in this case.

C. **Circuit Split as to Application of Independent Intermediary Doctrine for Post-Arrest Indictment.**

The Fifth Circuit has held the independent intermediary doctrine applies even to a post-arrest indictment such as the one in this case. *See, e.g., Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016); *Hale v. Clayton*, 198 F.3d 241, 241 (5th Cir. 1999). However, as the Court recognized in *Buehler*, there is a split of authority in this regard. *Buehler*, 824 F.3d at 554 n.6.

The *Buehler* Court noted that several Circuits hold that post-arrest indictments do not insulate officers from unconstitutional arrests. *Jones v. Cannon*, 174 F.3d 1271, 1287 (11th Cir. 1999) (holding that a grand jury indictment insulated police officers from damages accruing after, but not before, the indictment); *Arnott v. Mataya,* 995 F.2d 121, 124 n.4 (8th Cir. 1993) (rejecting the argument that a grand jury indictment insulated police officers from false arrest claims); *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006) (holding under New York law that a grand jury indictment does not create a presumption of probable cause for false arrest claims). *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 n.13 (6th Cir. 2005) (rejecting argument that "a subsequent grand jury indictment can establish probable cause for an earlier arrest") *See also Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *Cox v. Pate*, 283 F. App'x 37,

9

39 (3d Cir. 2008) (concluding that court "appropriately recognized that the subsequent indictment had no bearing on [the plaintiff's] claim for false arrest"); *Ojo v. Lorenzo*, 64 A.3d 974, 979 (N.H. 2013) (concluding that "post-arrest indictments do not operate retroactively to establish the existence of probable cause at the moment of arrest").

A Petition for Writ of *certiorari* is pending in the *Buehler* case as of the filing of this Memorandum Brief. *See Buehler v. Austin Police Dep't,* Docket No. 16-729 (petition filed on December 2, 2016).[3] In the event *certiorari* is granted in *Buehler*, the United States Supreme Court may alter the Fifth Circuit's application of the independent intermediary doctrine to post-arrest indictments such as the one in this case. While this Court is bound to apply Fifth Circuit precedent, Plaintiff preserves the issue of the applicability of the independent intermediary doctrine to post-arrest indictments for further appellate review. Plaintiff contends that the *Hand* and *Buehler* decisions were wrongly decided and that the reasoning of the Second, Third, Sixth, Eighth and Eleventh Circuits should be adopted as to this issue in the Fifth Circuit. The post-arrest indictment in this case has no bearing on whether probable cause existed to arrest Fuller at the time of the arrest.

In any event, Plaintiff contends that even if *Buehler* is not reversed by the Supreme Court, the independent intermediary doctrine is inapplicable in this case because of misdirection by Sloan as to where Fuller resided as of the date of her arrest. Plaintiff should be allowed to proceed on her wrongful arrest claim notwithstanding the baseless indictment procured against her.

---

[3] The Petition in *Buehler* was the "Petition of the Day" on SCOTUSBlog. Kate Howard, Petition of the Day, SCOTUSBlog (Feb. 2, 2017) *available at:* http://www.scotusblog.com/2017/02/petition-of-the-day-1085/

**D. *Monell* Claims Against Monroe County.**

For purposes of this case, Plaintiff concedes dismissal of the claims against Monroe County.

## V. CONCLUSION

There are genuine issues of material fact which preclude summary judgment. Accordingly, summary judgment should be denied and the claims against Sloan individually should proceed to trial.

**RESPECTFULLY SUBMITTED**, this the 14th day of February, 2017.

**MCLAUGHLIN LAW FIRM**

By: /s R. Shane McLaughlin
R. Shane McLaughlin (Miss. Bar No. 101185)
Nicole H. McLaughlin (Miss. Bar No. 101186)
338 North Springs Street, Suite 2
Post Office Box 200
Tupelo, Mississippi 38802
Telephone: (662) 840-5042
Facsimile: (662) 840-5043
Email: rsm@mclaughlinlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing document with the Clerk of Court using the ECF system, which sent notification to the following:

**Jim Waide**
**Waide & Associates, PA**
**Post Office Box 1357**
**Tupelo, Mississippi 38802**
**waide@waidelaw.com**

**Arnold Luciano**
**Daniel J. Griffith**
**Jacks Griffith Luciano**
**Post Office Box 1209**
**Cleveland, Mississippi 38732**
**aluciano@jlpalaw.com**
**danny@jlpalaw.com**

**THIS** the 14th day of February, 2017.

/s R. Shane McLaughlin